[No. 22899. Department One. May 19, 1931.]

AMBROSE CODD, *Respondent*, v. CROWLEY COMPANY, *Appellant*.[1]

*Luby & Pearson* and *McWilliams & Weller,* for appellant.

*Post, Russell, Davis & Paine,* for respondent.

HOLCOMB, J.—On April 23, 1929, these parties entered into a contract in writing for the manufacture and sale of certain lumber, in which respondent was named as the party of the first part and appellant as party of the second part. The contract, so far as is material, reads:

"The party of the first part agrees to saw, manufacture, sell and deliver f. o. b. cars Tekoa, Washington dry bright about two million five hundred thousand feet board measure Pondosa Pine lumber of grades No. 4 and better that the logs will produce, free of encumbrances and liens. Sawing is to commence imme-

[1]Reported in 299 Pac. 366.

diately and to continue uninterrupted until cut is complete. All lumber is to be in pile by September 1st, 1929. Lumber is to be shipped as soon as dry, or at the instructions of the party of the second part. The first party reserves the right to ship a minimum of one car a day after the lumber is dry. The party of the first part has the privilege of taking out any quantity of the No. 3 or 4 boards for his own use or for sale in his retail department. The price of the lumber is to be twenty-two ($22.00) dollars per thousand board measure f. o. b. cars Tekoa, Washington.

"The party of the first part agrees to cut all selects that logs will produce into 4/4 thickness and all No. 3 and better shop into 5/4 thickness, all shop to be cut as wide as the logs will produce, thickness to $\frac{1}{8}''$ heavy, or $1\frac{3}{8}''$ thick green at the saw. All box lumber that will make 11" in width to be cut into 6/4 thickness. Balance of the common which will not make 6/4 x11 box to be cut into inch boards. All box lumber to be cut $\frac{1}{8}''$ heavy at the saw. All inch boards to be cut plump inch. Sawing specifications to be changed from time to time in writing at option of the party of the second part.

"Terms are to be 2% discount 10 days after arrival of car, or 60 days net. Party of the first part to furnish a plat of the yard showing the pile numbers and the quantity and grade of lumber in each pile, this to be furnished monthly, or changes as they are made.

"In Witness Whereof, the party of the first part has set his hand and seal the day and year first above written, and the second party has caused this instrument to be executed by its duly authorized agent."

Respondent brought this suit, alleging in his complaint that, in compliance with the foregoing contract, he shipped to appellant in October and November, 1929, twenty cars of lumber of the value of $9,256.32, at the contract price, which appellant received, kept, and neglected and refused to pay therefor. He further alleged that he had, at the time of bringing the action, in his lumber yard at Tekoa, Washington, 639,-

729 board feet of lumber cut under the contract for appellant, which appellant refused to accept and pay for, which lumber was of the market value of $16.50 per thousand at Tekoa, to the damage of respondent, by reason of refusing to accept the remainder of such lumber, in the sum of $3,239.06. Recovery of $9,256.32, with interest at six per cent, was demanded.

Appellant answered, averring a number of objections and reasons why the lumber was not accepted by it and setting up a number of counterclaims. These affirmative answers and counterclaims were put in issue by the reply. At the conclusion of the trial, the court held that respondent was entitled to judgment for the twenty cars of lumber shipped, less some rejected by appellant as mismanufactured, and in the further amount of the difference between the market value and the contract price of the lumber cut under the contract and not shipped. A counterclaim of appellant for failure to ship box lumber when ordered was allowed, as was the item of the damages admitted by respondent for failure to roof the lumber piles. As to the remaining items of counterclaim, the trial court held that appellant, having received and kept the lumber without calling for a reinspection of the same, as provided by the rules of the Western Pine Manufacturers' Association, must be held to have waived any further claim for damages, and findings and judgment were entered in accordance therewith.

From the judgment entered by the trial court, after appellant had appealed therefrom, respondent filed a cross-appeal, and on cross-appeal alleges errors of the trial court in two particulars in its findings.

Appellant first contends that, in determining the amount of the damages to respondent for the lumber that was not shipped, the trial court erred in taking the market value of mill run lumber instead of the

graded lumber; and, second, that the court erred in holding that the Western Pine Manufacturers' Association rules governed the contract.

In connection with the second contention, appellant argues that the association rules should not govern, because the provisions of the uniform sales act apply in this case.

We shall answer the second contention first for the reason that it will abridge much of the discussion. The uniform sales act is codified in Rem. 1927 Sup., §§ 5836-1 to 5836-79, inclusive.

Section 5836-15, quoted in full by appellant, among other things, prescribes that there is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale except as defined in two subdivisions thereof which are set out in full. But the very first clause of that subdivision reads: "Subject to the provisions of this act and of any statute in that behalf," etc.

Another subdivision, § 5836-49, quoted in full by appellant, as to the effect of acceptance of goods by the buyer in discharging the seller, etc., also begins with the following clause: "In the absence of express or implied agreement of the parties," etc.

Another subdivision, § 5836-69, relating to option of a buyer in accepting or retaining goods, and his remedy in such case, becomes ineffective in this suit, for the reason that there is a still later provision, § 5836-71, prescribing how the uniform sales act shall be interpreted, which reads:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

The evidence shows that this is a mill run contract. It also shows, and it was admitted by the president of appellant that this contract was governed by the rules of the Western Pine Manufacturers' Association. He testified that it was governed by a "blue book" of that association which was effective prior to July 1, 1929.

Under the rules of the association, this contract and the transactions thereunder are not governed by the uniform sales act, but come within the exceptions therein.

It is not now disputed that appellant breached the contract early in February, 1929.

The trial court was liberal in reception of evidence on behalf of the parties. The evidence of respondent, supplemented by that of two disinterested witnesses, one of whom was avowedly followed by the trial judge, was amply sufficient to prove the market value of such lumber at the time and place of the breach of the contract. It cannot be said that there is a preponderance against his findings. Unless we discover a preponderance against the findings of the trial court we never disturb them.

It must be said, also, that the same rule applies to the cross-appeal of respondent.

We find no error, and judgment is affirmed as to both appeals.

TOLMAN, C. J., MITCHELL, MAIN, and PARKER, JJ., concur.